NICKUM v. BURCKHARDT.

(47 Pac. 888.)

</div>

PLEADING ESTOPPEL.—A party who has an opportunity to plead an estoppel upon which he relies, and fails to do so, but goes to issue on the fact, waives the estoppel and puts the matter at large, and the jury may disregard the estoppel, and are at liberty to find the truth: *Bruce* v. *Phoenix Ins. Co.*, 24 Or. 486; and *Bays* v. *Trulson*, 25 Or. 109, cited and followed.

CORPORATIONS—WHO ARE STOCK SUBSCRIBERS.—One who has signed a preliminary subscription to the capital stock of a corporation, and has signed the consent agreement for the first meeting of stockholders, and actually participated in such meeting, is a stock subscriber, though he has not signed the stock subscription book after the filing of the articles of incorporation: *Coyote*

*Mining Co.* v. *Ruble,* 8 Or. 284, distinguished; *Balfour* v. *Baker City Gas Co.,* 27 Or. 307, cited and applied.

CHANGING OBJECTS OF CORPORATION—VALIDITY OF ORGANIZATION.— A subscriber to the stock of a corporation cannot avoid liability upon his subscription on the ground that the purposes designated in the articles of incorporation do not correspond with those set forth in the preliminary subscription, where he participated in the organization under such articles.

VALIDITY OF ORGANIZATION—NOTICE TO SUBSCRIBERS.—Subscribers who were present and participated in the first meeting of the stockholders of a corporation cannot object that the organization was illegal because certain other subscribers, whose presence was not necessary to make up the requisite representation of half the capital stock, were not notified of the meeting as required by law.

VALIDITY OF CORPORATE ORGANIZATION—NOTICE TO SUBSCRIBERS.— One who subscribes to the capital stock of a corporation after its apparent organization cannot avoid liability therefor because certain preliminary subscribers, whose presence was not necessary to make up one-half the capital stock required to be represented, were not notified of the first meeting of the corporation.

ESTOPPEL—PRIVITY BETWEEN CORPORATIONS AND THEIR STOCK-HOLDERS.—A stockholder and his corporation are in privity as to an adjudication against the corporation in matters pertaining to duties it owes its members; but when the corporation sues a delinquent member for his stock subscription, it cannot be said to represent any shareholder, so as to bind him by the result, for it is apparent that in such a case the corporation and the stock subscriber are strictly adversary.

IDEM.—A judgment for defendant in an action by a receiver of a corporation against an alleged stock subscriber, involving the sole issue whether or not he was a subscriber at the date of the attempted organization, is not available as an estoppel against the receiver in a subsequent action to recover an unpaid subscription from another alleged stockholder—in other words, the action of the corporation was against the stockholder sued, and not in defense of his rights or interests, and binds only the parties to it.

From Multnomah:   E. D. SHATTUCK, Judge.

This is an action by J. M. Nickum, as receiver of the Oregon Fertilizing Company (a private corporation), to recover from Burckhardt Bros. an amount claimed to be due on a certain alleged subscription to the capital stock of said company.   The defendants filed a plea in abatement to the effect that the alleged corporation was never legally organized.   On a trial of this issue there was a

judgment for defendants, from which this appeal is taken.
REVERSED.

For appellant there was a brief over the names of *Charles J. Schnabel, Ralph W. Wilbur,* and *John J. Balleray,* with an oral argument by *Messrs. Schnabel* and *Wilbur.*

For respondent there was a brief and an oral argument by *Mr. Joseph B. Thompson.*

Opinion by MR. JUSTICE WOLVERTON.

This is an action to recover for assessments levied upon unpaid capital stock of a private corporation. About June 18, 1893, some thirteen persons, among whom were Guy Posson, who signed for two shares; J. E. Juston, for four; F. C. Barnes, for ten; and H. Pease, for three—subscribed the following agreement, each placing opposite his name the number of shares presumably intended to be taken: "We, the undersigned, each in consideration of the promise of the other, agree to subscribe for and take the number of shares of the capital stock set opposite our respective names of a company to be incorporated for the purpose of operating a fertilizer, feeding and fattening stock and poultry; and, if obtainable, collecting and disposing of swill, and other purposes of like nature; said company to be incorporated in accordance with the laws of the State of Oregon, with a capital stock of $15,000, divided into 150 shares of the value of $100 each." There were seventy-eight shares subscribed for upon this paper, representing $7,800. On the 7th day of October, 1893, three of the subscribers executed, duly acknowledged, and caused to be filed and recorded in the proper offices, articles of incorporation, incorporating the Oregon Fertilizing Co., specifying the object and business thereof to be "to transport wood, produce, and garbage, and to cremate

such garbage, or to use the same for feed or fertilizing purposes." A little later, all the subscribers to said instrument, except the four above named, signed with others the following writing, which is contained in a minute book kept for the purpose of recording the proceedings of the corporation, to wit: "We, the undersigned, hereby subscribe for the number of shares of capital stock of the Oregon Fertilizing Company, set opposite our respective names, and agree to pay for the same at such time or times as may be ordered by the board of directors hereafter to be elected." Only sixty-nine shares of the capital stock were subscribed for upon this latter instrument. Subsequently all the subscribers to this instrument, together with Posson and Juston, signed an agreement to hold the first meeting of the stockholders on October 14, 1893, waiving the thirty days' notice required by law, and in pursuance thereof the meeting was held, all said signers being present, either in person or by proxy, but no others, and participated in the election of directors and other business. The corporators having certified to the result of the election, the directors elected took the oath of office, and at once organized by electing the officers of the board. To abate the action, the defendants plead that the plaintiff company is not an incorporation.

It was urged at the hearing that the defendants ought to be estopped from alleging that the Oregon Fertilizing Company is not a corporation duly incorporated and organized in all respects as contemplated by law, inasmuch as they are subscribers or purchasers of stock subsequent to the alleged completed organization of the company; that, having dealt with the company in its corporate capacity, and having entered into contractual relations with it, they have recognized its existence as a body corporate, and that now, when sued upon their obligation to it as such a body, they should not be permitted to deny

its legal existence. The doctrine here contended for is undoubtedly well grounded in the law, but it cannot be invoked in this case because not pleaded. The opportunity was afforded for setting up the supposed estoppel in the reply, but it was not done, and it is now too late to assert it. It is said that "if a party who has an opportunity to plead an estoppel upon which he relies fails to do so, but goes to issue on the fact, he thereby waives the estoppel, puts the matter at large, and the jury may disregard the estoppel, and are at liberty to find the truth": Note to *Tyler* v. *Hall* (Mo.), 27 Am. St. Rep. 337-346 (15 S. W. 319). To the same effect are *Bruce* v. *Phoenix Ins. Co.*, 24 Or. 486 (34 Pac. 16); and *Bays* v. *Trulson*, 25 Or. 109 (46 Am. & Eng. Corp. Cas. 386, 35 Pac. 26).

This question disposed of, we come to another, more complex in its nature, and that is whether there has been an organization of the plaintiff corporation under and in pursuance of the general statutes providing therefor. The regularity of the execution and filing of the articles of incorporation is conceded. The persons subscribing the articles are known as the incorporators, and their powers and duties are purely statutory. They may open books and receive subscriptions to the capital stock; "they shall give notice to the subscribers to meet" at such time and place as they may designate for the purpose of electing directors; they shall act as inspectors at the first meeting for that purpose, certify who are elected, and appoint the time and place of their first meeting. This enumeration comprises the substance of their powers: See section 3222, Hill's Code. These are all acts necessary to and in furtherance of the completion of the organization. The organization is completed only when directors have been elected, and they have elected a president and secretary, which it is contemplated they shall do at their first meeting. From the time of the first meeting of the directors,

that is to say, from the time of the organization of the board, "the powers vested in the corporation are exercised by them, or by their officers or agents under their direction" (Hill's Code, § 3225), thus relieving the incorporators of further duty or power in the premises, or, rather, their functions then cease because their duties have been fulfilled and their powers executed. From the date of its completed organization the incorporation may begin the prosecution of its enterprise or business. It may then sue and be sued, contract and be contracted with, and exercise any of the other statutory powers incident to its organization and the enterprise, business, pursuit, or occupation adopted. The corporation may elect its board of directors when one-half of the capital stock has been subscribed: Hill's Code, § 3222; *Fairview R. R. Co.* v. *Spillman*, 23 Or. 587 (32 Pac. 688). And one question here is whether one-half of the capital stock had been subscribed when the board was elected. It seems to be supposed that in order to constitute a person a subscriber to the capital stock of a corporation he must have subscribed to the stock books of the concern after its articles of incorporation have been perfected and filed, and *Coyote Mining Co.* v. *Ruble*, 8 Or. 284, is cited as authority. Boise, J., at page 294, says, in effect, that to put a person in the position of a subscriber to the capital stock it must be shown by the stock book signed by him, or evidence equivalent to such signing. This would seem to support the proposition, but at another place (page 298) he says: "It is necessary for the corporation to prove the subscription by producing the subscription signed by Ruble, either by himself or by another for him with his authority, or by some acts of his which are equivalent to a subscription." So that the case does not decide either that the primary subscription must be made upon the stock book, or that it shall have been made subsequent to the execution of

the articles of incorporation. In a late case *(Balfour* v. *Baker City Gas Co.,* 27 Or. 307, 41 Pac. 165), BEAN, C. J., speaking for this court, says: "From an extended examination of the authorities we take the law to be that when the proposed corporation is formed as contemplated in the preliminary subscription, and within a reasonable time thereafter, the subscription, unless revoked in the manner authorized by law, becomes irrevocable, the subscriber becomes a shareholder, and liable as such without any further act on his part." And this seems to be so, although the statute .may provide for the opening of stock books by designated persons after the articles are filed: Id.; 1 Thompson on Corporations, §§ 1152-1166; *Buffalo R. R. Co.* v. *Gifford,* 87 N. Y. 294. Nor is the distinction taken in some of the cases between a present subscription and an agreement to subscribe to the stock of a corporation thereafter to be created thought to be sound: 1 Cook on Stocks and Stockholders, § 75; *Knox* v. *Childersburg Land Co.,* 86 Ala. 180-184 (5 South. 578); *Athol Music Hall Co.* v. *Carey,* 116 Mass. 471. Now, it appears that by the preliminary subscription seventy-eight shares of the capital stock were signed for, three more than was necessary for the completion of the organization by the election of directors. Four of the individuals signing this paper, representing nineteen shares, did not sign the later agreement, to which sixty-nine shares only were subscribed. All those subscribing the latter paper, together with Guy Posson and J. E. Juston, who signed the preliminary subscription, signed the consent agreement for holding the first meeting, and participated therein, and Juston was elected a director. So it will be seen that if the two shares of Posson and the four of Juston are added to the sixty-nine shares signed to the second paper, one-half of the capital stock was represented at such meeting. But the question arises, Were they subscribers to the

capital stock?   We think that, having signed the prelim-
inary subscription and the consent agreement for the first
meeting, and having participated therein, they became
bound in that capacity, and must be so considered.   They
certainly are estopped by their acts from denying that
they are subscribers, and, this being so, the law requiring
a subscription of one-half of the capital stock before organ-
ization was substantially complied with.

Incidental to this question, it is argued that the pur-
poses designated in the articles of incorporation do not
correspond with those set forth in the preliminary sub-
scription, and therefore that Posson and Juston cannot be
held to be subscribers.   We presume that ordinarily a
material departure in this respect will avoid the original
agreement, but in this case the persons named have con-
strued the purposes to be one and the same by participa-
tion in the organization under the articles of incorpora-
tion, or, rather, to speak more concisely, they have as-
sented to the departure, if such it may be termed:   *Knox*
v. *Childersburg Land Co.*, 86 Ala. 180 (5 South. 578).

Again, it is urged that if the primary subscription is
sufficient to bind the subscribers to the capital stock of
the concern, then, Barnes and Pease  not being present,
and having no notice of the first meeting, and not having
waived the same by writing or otherwise, the election of
directors was irregular and void.   We are not to be
understood as passing upon the sufficiency of this paper
within itself, but that, considering the subscription there-
to of Posson and Juston, in connection with their subse-
quent acts, they were properly recognized as stockholders,
and hence that one-half of the capital stock was repre-
sented at the organization of the company.   The fact that
Barnes and Pease had not been notified of the meeting
could not furnish grounds for objection by those sub-
scribers present and participating therein;  they have not

suffered by the omission, and are not in a position to object as to others: *Schenectady R. Co.* v. *Thatcher,* 11 N. Y. 102. See also *Handley* v. *Stutz,* 139 U. S. 422 (11 Sup. Ct. 530); Morawetz on Private Corporations, § 399. Thus we have an organization perfected by persons bound as subscribers, and representing fully one-half of the capital stock as fixed by the articles of incorporation, and all bound by its proceedings. We think the organization valid, although Barnes and Pease were not notified. As to how they would be affected by want of notice it is not for us to determine at this time; it is sufficient to say that those subscribers participating cannot object on that account.

The defendants, if subscribers to the capital stock, became such after the organization, and the want of notice to Barnes and Pease could not affect them; so that they are in no better position to object to the regularity of the organization on that account than those participating in the first meeting. The result is that, in so far as they are concerned, the company was duly incorporated, and this result is reached, not because they are estopped by having dealt with it, but because it was legally organized prior to their subscription to the capital stock.

For the purpose of estopping the plaintiff from asserting its due and legal organization, it is alleged in the answer in abatement that plaintiff had theretofore instituted an action in a justice's court against Guy Posson for assessments made by the company upon his alleged subscription to the capital stock; that a trial was had upon the sole issue whether Posson was a subscriber at the date of the attempted organization; and that it was determined by the judgment that he was not. It is claimed that, as the same question is necessarily involved in determining in this action whether the plaintiff was duly organized, the plaintiff is estopped to assert its truth, the judg-

ment having gone against him in the justice's court. The plea is argumentative, and avers in effect that, as the judgment in the justice's court estops the plaintiff to now assert that Posson is a subscriber, therefore it cannot be affirmed that the corporation is duly organized. That this is an action upon a different cause from the one against Posson cannot be gainsaid; the injury, therefore, to which the estoppel is pertinent must be confined to the point or question actually determined in the Posson case: *Cromwell* v. *County of Sac*, 94 U. S. 353. Thus far, the plea is apparently within the rule. But a very important essential to the estoppel is wanting in that this cause and the one adjudicated in the justice's court are not between the same parties in the same right or capacity, or their privies claiming under them. This objection is fatal to the plea: 1 Freeman on Judgments, § 252. The judgment of the court below must therefore be reversed, and the cause remanded for such further proceedings as may be deemed proper not inconsistent with this opinion.

REVERSED.

Decided April 19, 1897.

ON MOTION FOR REHEARING.
(48 Pac. 474.)

Opinion by MR. JUSTICE WOLVERTON.

Since the opinion was rendered in this cause, we have been favored with an elaborate brief upon respondents' motion for a rehearing, urging with commendable earnestness that the court is in error in holding that the plaintiff is not estopped to prosecute this action by reason of the judgment rendered and given in Posson's favor in the justice's court. In our anxiety to be right, we have at much pains re-examined the question, but find no reason for receding from our former position. One line

of authorities relied upon in support of the motion establishes the doctrine clearly stated by Chief Justice FULLER in *Hawkins* v. *Glenn*, 131 U. S. 332, that "A decree against a corporation in respect to corporate matters, such as the making of an assessment in the discharge of a duty resting on the corporation, necessarily binds its members, in the absence of fraud, and that this is involved in the contract created in becoming a stockholder." The estoppel which was invoked with success in that case was a decree of a chancery court in a creditor's suit against a corporation, whereby an assessment was levied against the stockholders. It was urged that as the stockholders were not made parties to the suit, nor served with summons, they were not to be bound by the decree; but it was decided that they were represented by the corporation, and that the assessment by decree took the place of a regular assessment by the board of directors, and, therefore, that it was unnecessary to make them parties to the suit, or serve them, but that they were bound by the decree, because they were integral parts of the corporation, and in view of the law they were privy to the proceedings touching the body of which they were members. Such is the effect also of *Glenn* v. *Liggett*, 135 U. S. 533; *Lehman* v. *Glenn*, 87 Ala. 618; *Howard* v. *Glenn*, 85 Ga. 238, 21 Am. St. Rep. 156; and *Glenn* v. *Williams*, 60 Md. 93. All these cases, including *Hawkins* v. *Glenn*, 131 U. S. 332, are concerning different phases of the same transaction, but the courts are in accord upon the proposition stated. *Stutz* v. *Handley*, 41 Fed. Rep. 531, is a case by a creditor of a corporation, instituted in behalf of himself and all others similarly situated, against a stockholder, to subject the amount remaining unpaid upon shares of the capital stock held by him to the payment of the company's debts. The creditor had previously obtained judgment against the

company for the price of certain machinery, against which it had interposed a counterclaim for damages by breach of warranty, which was disallowed, and the stockholder attempted to again counterclaim for the same breach, but it was held that he was precluded by the judgment in the action against the company upon the ground and for the reason that he was represented by the company in that action, and had already had his day in court on that question. *Baines* v. *Babcock*, 95 Cal. 581, 29 Am. St. Rep. 158, was a suit similar to *Stutz* v. *Handley*. A judgment had been recovered against the company upon its contract, and in the creditor's suit a stockholder attempted to show that the contract was one which the corporation was without power to make, and therefore ultra vires and void, but the court held that he was precluded by the judgment in the action against the corporation. In deciding the question, DE HAVEN, J., said: "A corporation represents and binds its stockholders in all matters within the limits of its corporate power, so long as it acts in good faith and without fraud upon their rights; and in the bringing and defending of suits affecting the rights and obligations of the corporation, it binds the stockholders as fully as in the making of contracts."

*Willoughby* v. *Chicago Junction Railway Co.*, 50 N. J. Eq. 656, was a case instituted by plaintiff in behalf of themselves and all others similarly situated who should come in and be made parties to the suit, in deciding which the court said: "From the very form and nature of these suits, each stockholder must be considered as represented; for if he is in sympathy with the complainant he may become a party complainant by application to the court, if he is in sympathy with the threatened action of the company, he is represented by and in the corporation, which is a necessary party to the suit." This was held to fall within a class of cases where a duty is incumbent upon

the corporation, but, failing to take action in the prem-
ises, a stockholder is permitted to prosecute as the nominal
party, but representing the corporation as the real party,
in the place and stead of the accustomed officials.   In all
these cases it will be seen that the stockholders are bound
by the judgment or decree against the corporation in
matters pertaining to the duties of the corporation touch-
ing its rights and obligations with which it is charged as
the representative of the individual stockholders, who may
be regarded in that respect as integral parts of the body
corporate, and this is as far as the estoppel extends.   But
in an action by the corporation against a stockholder to
recover for stock assessments, while it may be said that
the corporation is acting in discharge of a duty imposed
upon it by the stockholders through the articles of incor-
poration and by-laws, the defendant is, from the very
nature of things, an adversary party in the fullest sense of
the word.   The corporation cannot be said to represent
the stockholder while prosecuting an action against him
to enforce the payment of a stock subscription which he
is resisting.   But a stockholder who has no action pend-
ing against him for the enforcement of his unpaid stock
bears the same relation to the corporation, is bound or
obligated to it by a contract of like nature and effect, and
his rights and duties toward the company and all other
stockholders are identical with the one resisting, so that
if, in such a case, it does not represent the stockholder
against whom the action is being prosecuted, can it be con-
sistently or logically said to represent such as have not
actions pending against them, in so far as to conclude
them in their individual capacities and touching their ob-
ligations to the corporation?   Mr. Van Fleet says: "In
order to conclude any right, title, or interest of a person
by adjudication, it is essential that he be a party to the
proceeding, or be represented by one.   In the latter case

he is said to be a privy": 2 Van Fleet on Former Adjudication, § 459. And it is because the stockholder is represented by the corporation that he is precluded by a judgment or decree rendered against it; but if the proceeding is one in which the stockholder and the corporation are adversary parties, the reason of the rule ceases, for in such case the corporation does not and cannot represent the stockholder. Suppose the judgment in the justice's court had gone against Posson, and it had been there determined that he was a subscriber to the capital stock of the concern, would it be contended for a moment that the defendant in this action would be precluded by that judgment when he at the same time was contesting the legality of the organization of the company upon the very ground that Posson was not a stockholder in an action of the same nature? In what way could it be said that the defendant here was in privity with Posson, and, if not in that event, why should he be when the judgment is rendered against the corporation? Stockholders are not in privity with the corporation as it pertains to actions prosecuted by it against them for the recovery of unpaid stock subscriptions, for the very cogent reason that they and the company are always adversary parties in such actions, and a priori they are not in privity with each other, as such privity must depend upon the corporate function to represent the stockholders, which does not nor cannot exist. The motion will be denied.

<div align="center">REHEARING DENIED.</div>