Argued April 10, affirmed April 23, 1918.

## VOGT *v.* MARSHALL-WELLS HARDWARE CO.

(172 Pac. 123.)

**Fraudulent Conveyances—Burden of Proof.**

1. In a suit to quiet title, a claim that plaintiff's apparent legal title is void because the property was conveyed in fraud of creditors places defendant in the position of a plaintiff in a creditor's bill, and defendant has the burden of proof to establish the fraudulent character of the conveyance.

**Fraudulent Conveyances—Husband to Wife—Presumption of Fraud.**

2. Conveyances from a husband to a wife, he being at the time greatly indebted, will be subjected to the strictest scrutiny by a court of equity; but it is going too far to say that such a conveyance creates a legal presumption of fraud.

**Fraudulent Conveyances—Husband to Wife—Evidence—Presumption.**

3. Whatever presumption or inference, either of law or fact, may be drawn from the circumstance that grantee is the wife of her grantor, is overcome by evidence indicating that through her natural wifely confidence in her husband a great portion of her inheritance has been wasted.

[As to the law of fraudulent conveyances as affecting husband and wife and transfers from one to the other, see notes in 19 Am. St. Rep. 657; 20 Am. St. Rep. 715; 90 Am. St. Rep. 497.]

**Fraudulent Conveyances—Husband to Wife—Notice of Embarrassed Condition.**

4. As affecting the validity of a deed by a husband to his wife of property which in fact belonged to her, it is immaterial whether or not she had notice of his embarrassed condition.

**Fraudulent Conveyances—Relationship Between Parties—Effect.**

5. The fact of relationship is merely a circumstance to be scrutinized with other circumstances in determining the good or bad faith of a conveyance to mere relatives or close friends, and, good faith and adequate consideration being shown, the circumstance loses its value.

**Estoppel—Pleading—Necessity.**

6. It is an invariable rule in this state that an estoppel cannot be taken advantage of without pleading it, if there is an opportunity to do so.

From Marion: WILLIAM GALLOWAY, Judge.

Department 2.

This is a suit to quiet title to 60 acres of real estate situated in Marion County, and to certain town lots situated in the town of Pratum in the same county. The controversy arises from the following circumstances: On April 8, 1916, the defendant Marshall-Wells Hardware Company recovered a judgment against the Abaqua Lumber Company, J. F. Hertzler and D. A. Vogt, the husband of plaintiff, for the sum of $1,568.83, with an attorney's fee of $150, and costs of action, and caused the property described in the complaint to be levied upon by the defendant Esch, who was sheriff of Marion County, and thereafter caused said property to be advertised for sale in satisfaction of said judgment, whereupon the plaintiff who held the record title to the property, brought this suit.

The defendants answered justifying under the judgment and alleging that D. A. Vogt was the owner of the property and that the alleged conveyance of the same to the plaintiff was made fraudulently and with intent to hinder, delay and defraud creditors of D. A. Vogt.

The plaintiff by way of reply denied the allegations as to the fraudulent character of the conveyance and set up substantially the following facts: That in the year 1899 plaintiff inherited from the estate of her father a farm in the State of Kansas, which she subsequently sold for $12,500; that in 1902 she inherited from the estate of her mother certain personal property, which she subsequently converted into money and received therefrom the sum of $4,500; that in 1908 plaintiff and her husband moved from Kansas to Oregon and settled near Pratum in Marion County; that

plaintiff at all times intrusted the management of her business affairs to her husband; that he conducted and managed the same and invested and reinvested the property so inherited by plaintiff and the income therefrom; that for the fourteen years she owned the farm plaintiff received about $500 per year rent from the same, and all of said moneys were paid to, collected and received by plaintiff's husband on her account; that after coming to the State of Oregon plaintiff entered into a contract with her brother V. J. Krehbiel for the purchase of the 60 acres of land described in the complaint, at the price of $9,000, and subsequently made improvements thereon of the value of $4,000, but by inadvertence and mistake the conveyance of said tract from V. J. Krehbiel was made to D. A. Vogt as grantee, whereas in truth and in fact it should have been made in the name of plaintiff as grantee; that in the year 1913, plaintiff purchased said lots 1, 2, 3, 7 and 8, block 3 of Pratum, Oregon, at the agreed price of $6,000, and afterwards purchased lot 5 in block 1 in the town of Pratum at the agreed price of $1,000, but by inadvertence and mistake the deeds to all of said lots were made to D. A. Vogt as grantee, whereas the same should have been made to plaintiff as grantee; that plaintiff had absolute confidence in her husband and did not inquire and had no occasion to inquire of her husband or her brother or anyone concerning the title to said lands and premises, and did not know that the title had been taken in the name of her husband until the autumn of 1915, when her husband informed her that he had in the manner aforesaid accepted and received the deeds of conveyance conveying title to himself as aforesaid, and at plaintiff's request promised and agreed to convey immediately the same to her, and thereafter on February 3, 1916, did so con-

vey the same; that since said conveyance plaintiff has been the owner of the legal title thereto, and at all times since the year 1910 when the 60 acre tract was purchased from her brother, and at all times since 1913 when she purchased the lots aforesaid, she has been the equitable owner and in possession thereof; that the whole of said real property was purchased with plaintiff's money and from her private means, and the improvements also have been paid for from plaintiff's money, and D. A. Vogt did not pay any part thereof. Then follow the usual allegations of good faith and a denial òf any knowledge that Vogt intended to delay or defraud his creditors. There was a trial in the Circuit Court and findings and a decree for plaintiff, the findings in regard to the *bona fides* of plaintiff being wholly in accord with the matter set up in plaintiff's reply.                   Affirmed.

For appellants there was a brief over the names of *Mr. Hall S. Lusk, Messrs. Emmons & Webster,* and *Mr. Walter C. Winslow,* with an oral argument by *Mr. Lusk.*

For respondent there was a brief with oral arguments by *Mr. James G. Heltzel* and *Mr. John H. Carson.*

McBRIDE, C. J.—1, 2. After a careful consideration of the testimony we agree with the Circuit Court in finding that the lands in question were purchased with plaintiff's money, and the fact that the conveyances were made to the husband was not the result of any desire or direction on her part to that end, but was through inadvertence, the consequences of which she sought to have corrected as soon as she became aware that the conveyances placed the legal title in the name

of her husband. Upon this branch of the case we think the evidence well-nigh conclusive. The reply set forth with great particularity the sources from which plaintiff received the money she claims she invested in the property. The persons from whom she inherited the lands and securities in Kansas, which she subsequently converted into the money that went into the property in question, are mentioned and data given which would have enabled defendants to contradict material portions of plaintiff's testimony, had it been false. The case stands thus: plaintiff, at the time of the levy of execution, had the clear legal title to the property. Defendant claims that the apparent legal title is void because the property was conveyed in fraud of creditors. This places defendant in the position of a plaintiff in a creditor's bill. The burden of proof being upon it to establish the fraudulent character of the conveyance. It is a well-established rule of law in cases of this nature that conveyances from a husband to a wife, he being at the time greatly indebted, will be subjected to the strictest scrutiny by a court of equity. Some authorities go so far as to intimate that such a conveyance is *prima facie* fraudulent: Bigelow on Fraudulent Conveyances, 214, and cases there cited. But it is going too far to say that such a conveyance creates a legal presumption of fraud. Mr. Bigelow well observes:

"At most, the relationship is but a circumstance to be taken into consideration with other facts, if there be such and that too, for or against the conveyance according to the situation; but standing alone it is a false quantity. Even if it could be said that relationship might raise a presumption that the conveyance was voluntary it would not follow that the presumption could not be met by evidence which would be sufficient in any other case unless indeed, the position

should be taken that the presumption was stronger than ordinary presumptions, a position not likely to be taken'': Bigelow, Fraud. Conveyances, 222, 223. See, also, pages 220, 221; *Schroeder* v. *Walsh,* 120 Ill. 403 (11 N. E. 70); *Davis* v. *Zimmerman,* 40 Mich. 24.

3, 4. We are of the opinion that whatever presumption or inference either of law or fact might be drawn from the circumstance that plaintiff was the wife of her grantor, is overcome by the evidence in the case which indicates that through her natural wifely confidence in her husband a great portion of her inheritance has been wasted. The enlightened legislation of this age recognizes the right of a wife to acquire and hold property and does not penalize the marriage relation by discriminating between a creditor wife and any other creditor in the method of securing *bona fide* claims. No one would question the right of another person not related to Mr. Vogt to secure and reduce to legal ownership property taken as Vogt took this property. The evidence is ample here to have justified a court in declaring a resulting trust in favor of plaintiff as to the property, even if she had not seasonably demanded and received a deed. Whether or not she had notice of her husband's embarrassed condition is immaterial. Even if the property had been his own and he had been indebted to her, she would have had the same right to take property in payment of her debt as any other creditor would have had.

5. It is true that debtors seeking to defraud their creditors most frequently make conveyances to near relatives or close friends, but the fact of relationship is merely a circumstance to be scrutinized with other circumstances in determining the good or bad faith of the transaction. Good faith and adequate consideration being shown, the circumstance of relationship loses its value.

6. It is also argued that plaintiff ought to be estopped from asserting her ownership in the property, by reason of the fact that she permitted her husband to manage her property in his own name and to obtain credit upon the faith of it to the injury of his creditors, and particularly of the defendants, and that the case comes therefore within the rule announced in *Marks* v. *Crow,* 14 Or. 382 (13 Pac. 55) ; *Bank of Colfax* v. *Richardson,* 34 Or. 518 (54 Pac. 359, 76 Am. St. Rep. 664) ; *Barger* v. *Barger,* 30 Or. 268 (47 Pac. 702). We will consider the condition of the pleadings as they relate to the right of defendants to urge the estoppel contended for by them.

A first and conclusive negative of the right of defendant to urge this defense is that it has not been pleaded. It is an invariable rule in this state that an estoppel cannot be taken advantage of without pleading it if there is an opportunity to do so : *Rugh* v. *Ottenheimer,* 6 Or. 231 (25 Am. Rep. 513) ; *Remillard* v. *Prescott,* 8 Or. 37; *Bays* v. *Trulson,* 25 Or. 109 (35 Pac. 26) ; *Nickum* v. *Burckhardt,* 30 Or. 464 (47 Pac. 888, 48 Pac. 474, 60 Am. St. Rep. 822) ; *First Nat. Bank* v. *McDonald,* 42 Or. 257 (70 Pac. 901) ; *Christian* v. *Eugene,* 49 Or. 170 (89 Pac. 419) ; *Tieman* v. *Sachs,* 52 Or. 560 (98 Pac. 163) ; *Gladstone Lumber Co.* v. *Kelly,* 64 Or. 163 (129 Pac. 763) ; *Lane* v. *Myers,* 70 Or. 376 (141 Pac. 1022, Ann. Cas. 1915D, 649).

The opinion of Justice BURNETT in the case last cited is instructive, dealing as it does with facts very similar to those in the case at bar. Here defendant had ample opportunity to plead the estoppel in its answer and failed to do so and it follows that that defense cannot be here considered. Even upon the facts it is not shown that plaintiff knew that the conveyances in question had been taken in her husband's name, or

that he had represented himself to be the owner of the property, or knew that he was so greatly indebted as to be in peril of insolvency, so that in any view of the case this defense fails. We are of the opinion the decree of the Circuit Court is in accordance with the law and the facts, and it is therefore affirmed.

AFFIRMED.

MCCAMANT, BEAN and BENSON, JJ., concur.