FIRST NATIONAL BANK OF ASHLEY, NORTH DAKOTA, a Corporation, Respondent, v. WM. H. MENSING, Prudie W. Mensing, and Elizabeth Mensing, Appellants.

FIRST NATIONAL BANK OF ASHLEY, NORTH DAKOTA, a Corporation, Respondent, v. WM. H. MENSING, Prudie W. Mensing, and Harold Mensing, Appellants.

FIRST NATIONAL BANK OF ASHLEY, NORTH DAKOTA, a Corporation, Respondent, v. WM. H. MENSING, Prudie W. Mensing, and R. G. Mensing, Appellants.

(180 N. W. 58.)

**Fraudulent conveyances — evidence held not to show debtor's beneficial interest in land purchased after judgment in names of children — judgment creditor has burden of proving fraud notwithstanding grantor and grantee are parent and child — relationship of parent and child not in itself badge of fraud — suspicious circumstances alone are not**

**equivalent to proof of fraud — insolvent debtor's preference of child is not fraudulent as matter of law.**

In three actions brought by a judgment creditor to subject to the lien of the judgment three parcels of land purchased subsequent to the judgment, each in the name of a different child of the judgment debtor, the evidence showed that the children in whose names the lands had been purchased had advanced to their father and mother from time to time moneys in excess of the amounts paid by the father upon the purchase price at the time of purchase; also that the children in whose names the lands were purchased worked away from home, earning money, part of which was turned over to the father, with an understanding that he would repay it at a subsequent time whenever they might desire to invest it. It is *held:*

(1) The evidence fails to show that the lands were purchased in the names of the various grantees in circumstances indicating that they held the title in trust for their father as the beneficial owner.

(2) Where a conveyance is attacked by a judgment creditor as fraudulent, the burden of proving the fraud rests upon the one asserting it.

(3) The relationship of parent and child existing between parties to an alleged fraudulent conveyance does not remove from the creditor the burden of proving fraud.

(4) Relationship of parent and child between the parties to an alleged fraudulent conveyance is a circumstance calling for a close scrutiny of the transaction, but is not itself a badge of fraud; nor does it give rise to a presumption supplanting proof.

(5) Suspicious circumstances alone are not equivalent to proof of fraud, and do not warrant a judgment in the face of satisfactory evidence of bona fide debtor and creditor relations between parent and child.

(6) An insolvent debtor's preference of his child is not fraudulent as a matter of law.

Opinion filed November 16, 1920. Rehearing denied December 6, 1920.

Appeal from District Court of McIntosh County, *Graham, J.* Reversed.

*Cameron & Wattam,* for appellants.

"The law presumes that all acts are done in good faith," 10 R. C. L. 875.

"In the ordinary transactions of life, fairness and honesty are presumed, and conveyances, sales, and contracts are generally presumed to have been made in good faith until the contrary is proven." Jones, Ev. Pock. ed. § 13.

"Evidence of fraud will not prevail over the presumption of honesty

unless established by irresistible evidence of double dealings." Snow
v. Wathen, 127 App. Div. 948, 112 N. Y. Supp. 41.

"The party alleging fraud must prove the same by evidence that is
clear and convincing." Englert v. Dale, 25 N. D. 587, 142 N. W.
169; McKillip v. Farmers State Bank, 29 N. D. 541, 151 N. W. 287.

The fraudulent intent and purpose must be proved as an independ-
ent fact. Comp. Laws 1913, § 7223; Wannemacker v. Merrill, 22 N.
D. 46.

"Insolvency is exceptional and must always be proved." Darand v.
Gray, 129 Ill. 9.

*Curtis & Remington* and *George & Rohwedder,* for respondents.

On the issue of fraudulent intent, it is relevant to show other vol-
untary conveyances, conveyances to relatives, or similar transactions
with others tending to show a common fraudulent scheme. Jones, Ev.
§ 143; 11 Enc. of Ev. 791 et seq.

The burden is on the wife to establish by a preponderance of evidence
the bona fides of the transfer of the property. Carson v. Stevens
(Neb.) 58 N. W. 845; Melick v. Varney (Neb.) 59 N. W. 521; Stein-
kaus v. Korth, 62 N. W. 1110; N. D. Comp. Laws 1913, § 5365.

Laches, to be available as a defense, should be set up in the trial
court. 10 R. C. L. 408; Henshaw v. State Bank (Ill.) 88 N. E. 216;
16 Cyc. 165; Luke v. Koenen (Iowa) 94 N. W. 278.

BIRDZELL, J.   In December, 1911, the Union State Bank of Ashley,
North Dakota, obtained a judgment against William H. Mensing and
Prudie W. Mensing, his wife, for $2,115.45.   Execution was prompt-
ly levied upon property of the judgment debtors, and it was sold for
$1,340.35, which amount was credited on the judgment, leaving a
balance of $775.10.   The plaintiff herein, the First National Bank of
Ashley, is the successor of the judgment creditor and owner of the
judgment.   This action was brought against the judgment debtors and
Elizabeth Mensing, a daughter, for the purpose of subjecting to the
lien of the judgment the northwest quarter of section 17, township 130,
range 69, in McIntosh county.   The legal title to this property stands
in the name of Elizabeth L. Mensing.   It is claimed by the plaintiff
that the defendants William H. and Prudie Mensing are the equitable
owners; that the land was bought with their money and placed in the

name of the other defendant to hinder the plaintiff in the collection of its judgment.

A similar action was brought against William, Prudence, and Harold Mensing (a son), involving the northeast quarter of section 18, township 130, range 69, standing in the name of Harold Mensing, and one against William, Prudence, and R. G. Mensing (another son), involving the northeast quarter of section 7, township 130, range 69, standing in the name of the latter. The three cases were consolidated and tried as one. At the conclusion of the trial, judgment was entered in each case favorable to the plaintiff, except in one particular to be noted. The defendants appeal and ask for a trial *de novo* in this court.

In this action, the one in which Elizabeth Mensing is a defendant, the judgment, however, further provided that the northwest quarter of section 17, township 130, range 69, was the homestead of William and Prudence Mensing, and dismissed the plaintiff's action as to that quarter, awarding costs to the defendants. Both the plaintiff and the defendants appeal from this judgment.

Since the evidence bearing upon each transaction in which the land was purchased in the name of a defendant other than William and Prudence Mensing has more or less of a circumstantial bearing upon the other transactions, it is not practicable to treat each transaction separately. One opinion will therefore suffice for the three cases.

Elizabeth Mensing, who was twenty-seven years of age at the time of the trial of this action, testified that she purchased the northwest quarter of section 17, township 130, range 69, in December, 1916, for $2,500, $1,000 being paid in cash and the balance embraced in a mortgage assumed by her. The cash payment was advanced by her father, William Mensing, who has also paid the interest on the mortgage. She further testified that since the year 1906 she had worked away from home in various employments, and had paid to her father from $10 to $15 per month, as a consequence of which payments he was indebted to her at the time of purchase to the extent of about $1,500. The money was to be repaid to her at any time she wanted it for investment. William Mensing testified that he owed his daughter Elizabeth more than the $1,000, which he advanced, and that he acted as her agent in the purchase of the land. There was no accurate record kept of the amount advanced by Elizabeth to her father.

The Mensing family lived upon the land, which stood in the name of Elizabeth, and the son, Harold, who was twenty years of age at the time of the trial, farmed it. Most of the machinery belonged to the father, and he received a share of the crop for its use.

The northeast quarter of section 18, which stands in the name of Harold, was deeded to him by his sister Lina Hite, before her marriage, in consideration of $1,201, $1,200 of this consideration representing a mortgage which was assumed by Harold. Lina Hite is not a party defendant in the action involving this quarter section. The material facts with reference to its original acquisition by her, however, according to the testimony, are as follows:

In July, 1917, she took title by warranty deed from C. A. Wenzel and wife. The consideration paid was $1,000. Five hundred dollars she obtained from her father, $300 was taken from the proceeds of a loan of $1,200, secured by a mortgage on the land, and $200 she obtained on her mother's note in the Security State Bank of Wishek. This note was later paid by her father. The $900 remaining of the $1,200 loan was turned over to her father. William Mensing testified that he advanced $500 on the purchase price of this Lina-Harold Mensing quarter, and that it represented money that he owed his daughter on account of money she had previously turned over to him while teaching school. There is some discrepancy between the testimony of the two Mensings and the testimony of the bank cashier with reference to the net amount of the proceeds of the loan that was deposited to the credit of William after the purchase price of the land was paid. But the amount was either $900 or $700. From all of the testimony, however, it clearly appears that William received back from this loan all of the money which he had advanced. If this quarter, then, is considered at the time of the purchase as Lina's, so far as this record shows none of her father's money is invested in it, and he would still owe her any money she might have advanced to him while teaching school.

The R. G. Mensing quarter, the northeast quarter of section 7, township 130, range 69, was purchased in October, 1917, from one J. F. Frazier for the consideration of $2,000. Of this $2,000, $1,000 was paid in cash, $500 being obtained from William Mensing, the other $500 being paid by a check drawn by R. G. Mensing on his father's account in the Ashley State Bank.

William Mensing, however, testifies that $500 was paid "as an option" at the time of purchase, and that the balance was all paid at one time. He professes to have no knowledge of the $500 check which the son claims to have drawn against his account. He stated that the $500 which he advanced to his son was money which he owed the son for deposits the latter had made with him from time to time. At the time of the purchase, and at the time the check was supposed to have been drawn upon his father's account, the son was under age. As to the amount of money advanced by this son, R. G. Mensing, to his father, the son testified that he had made deposits in the bank for the benefit of his father to the extent of about $350, that he kept no duplicate deposit slips and had no accurate record of the amount. He was able to produce some canceled checks showing that at least $225 had been turned over to his father and mother during the year 1917, and there were also some checks subsequent to the purchase. He stated that he had paid some grocery bills for the family and settled his father's account at the drug store; paid a note at the bank, and paid for a drill purchased by the father in 1918 for $190. He stated that he began turning over money to his father in October, 1914; that from that time to the following spring he averaged $20 a month and that summer (1915) he worked in a drug store, paying his father from $20 to $25 a month. The next fall he worked in an elevator, during which time he gave his father practically $50 a month. Up to the time of the purchase of the land his approximate figures on what his father owed him were $925, and since the purchase he had worked for his father, earning the balance of the $1,000. This son went into the Army, and the land was farmed by his brother Harold, who, according to the testimony, was to receive the crop for two years in consideration for his payment of the taxes and breaking the land.

There is some testimony which has a general bearing upon the attitude of the father toward the crops grown on this land. It appears that the crops were generally sold in his name, and that on one occasion in the year 1918 he gave a crop mortgage to the Ashley State Bank upon three fourths of all the crops grown or planted upon these three quarter sections of land. There is also some testimony to the effect that Elizabeth had at times been hard pressed for money, and on such occasions had borrowed from a bank and from individuals. As no

reason is assigned for her not withdrawing or collecting the money her father owed her, it is contended that this is a strong circumstance indicating that he was not indebted to her. We do not so regard it.

All of the testimony above referred to is practically undisputed. Owing to the nature of the transactions this would necessarily be so, for there would ordinarily be little opportunity to obtain evidence from sources other than the parties to the transaction. The questions for our consideration may briefly be stated as follows: (1) Under the evidence in this record, does it appear that the lands, or any of them, were purchased in the names of the various grantees in circumstances indicating that they held the title in trust for their father as the beneficial owner? or (2) Were the conveyances, or any of them, fraudulent as to the judgment creditor? We are of the opinion that the evidence clearly fails to sustain the affirmative of either of these propositions as to any of the transactions involved. The burden of proving the beneficial ownership in the judgment debtor is upon the judgment creditor, as is also the burden of proving fraud. 20 Cyc. 751. According to the weight of modern authority, this rule is not changed by reason of the relationship of parent and child existing between the parties to the alleged fraudulent transfer. 20 Cyc. 753; 12 R. C. L. 488; Bigelow, Fraud. Conv. Knowleton's Rev. ed. p. 222; Bump, Fraud. Conv. 4th ed. § 67; 1 Moore, Fraud. Conv. p. 407; Wait, Fraud. Conv. 3d ed. § 242; Oberholtzer v. Hazen, 92 Iowa, 602, 61 N. W. 365; Steinfort v. Langhout, 170 Iowa, 422, 152 N. W. 612; Shea v. Hynes, 89 Minn. 423, 95 N. W. 214; Vogt v. Marshall-Wells Hardware Co. 88 Or. 458, 172 Pac. 123 (grantee wife of grantor); Towan v. United States Fidelity & G. Co. 105 Wash. 432, 178 Pac. 473. This rule has previously been regarded with favor in this court. Fluegel v. Henschel, 7 N. D. 276, 280, 66 Am. St. Rep. 642, 74 N. W. 996; Dalrymple v. Security Loan & T. Co. 9 N. D. 306, 318, 83 N. W. 245. Neither is this burden sustained by proof of circumstances which merely give rise to suspicion. For, as it has been well stated:

"Suspicious circumstances are not the equivalents of proof; and unless all the facts and circumstances of the case, when taken together, are strong enough to generate a clear, rational conviction of the existence of the fraud charged, that conclusion ought not to be adopted which will destroy a prima facie good title to property, and

blacken the characters of the parties concerned." McDaniel v. Parish, 4 App. D. C. 213–216. Judgment cannot go upon mere suspicion. Mayers v. Kaiser, 85 Wis. 382–393, 21 L.R.A. 623, 39 Am. St. Rep. 849, 55 N. W. 688.

The relationship between the parties is not a badge of fraud; it creates no presumption of fraud; neither, standing alone, does it warrant a judgment based upon suspicion. It calls for a closer scrutiny of the transactions than would be the case between strangers. But, applying a closer scrutiny to the transactions narrated in the testimony in the case at bar, we fail to see wherein there is any substantial testimony to prove fraud or a trust for the benefit of the father.

Instead of proving fraud or that the conveyances were in trust, we think the record in this case rather establishes a course of dealing between the father and the children whereby their earnings were turned over to the father from time to time with the understanding that they should remain theirs. The creditor, of course, has no claim upon the earnings of these children. Seiler v. Walz, 100 Ky. 105, 29 S. W. 338, 31 S. W. 729; Caldwell v. Deposit Bank, 18 Ky. L. Rep. 156, 35 S. W. 625. Concerning the earnings during minority, the children were in effect emancipated. Flynn v. Baisley, 35 Or. 268, 45 L.R.A. 645, 76 Am. St. Rep. 495, 57 Pac. 908. In these land transactions the father was but discharging obligations previously incurred by him in favor of the children. It is not shown that he put his own property beyond the reach of creditors by transferring it to his children, but rather that he recognized his obligation to them and advanced no more of his own money than was necessary to discharge these obligations, if indeed he advanced sufficient money for that purpose.

It follows from the above that the judgments rendered in the three cases must be reversed and judgment entered for the defendants in each case, dismissing the action, with costs. In the Elizabeth Mensing suit, in which the plaintiff has also appealed, the respondent has awarded no costs on appeal.

CHRISTIANSON, Ch. J., and ROBINSON, J., concur.

BRONSON, J. I concur in result.

GRACE, J. (specially concurring). The evidence, or the record here,

is insufficient to show that the lands purchased by the grantees, the defendants herein, was other than a bona fide purchase, in good faith, and for their use and benefit, or that it was held by them in trust for the benefit and use of the father.

The evidence is also insufficient to show that the conveyance of the land to them was tainted with fraud, or that such conveyance was in fraud of creditors.