FIRST NATIONAL BANK OF MENDOTA, ILLINOIS, a Federal
Banking Corporation, Respondent, v. JESSE SULLIVAN and
Ida Sullivan, Appellants.

(234 N. W. 658.)

Opinion filed February 3, 1931.

*Kvello & Adams,* for appellants.
*C. G. Mead,* for respondent.

CHRISTIANSON, Ch. J.   This is an action to set aside certain con-
veyances of real and personal property by the defendant Jesse Sullivan

to his wife, Ida Sullivan. In their answers, the defendants admitted that the conveyances had been made as alleged in the complaint but denied that they were fraudulent and alleged that they were made in compliance with, and consummation of, a contract entered into before their marriage. The answers further alleged that one of the tracts of land conveyed constituted the homestead of the defendants and, that consequently, the conveyance thereof in no event was fraudulent. The case was tried to the court without a jury. The court found that the tract claimed to be a homestead was in fact occupied by the parties as such at the time of the conveyance and that, hence, the conveyance thereof did not constitute fraud. The trial court found further, however, that the conveyance of the real property other than the homestead, and of the personal property, was fraudulent and that the deed and bill of sale should be set aside. The defendants have appealed from the judgment and demand a trial anew in this court.

The material facts are substantially as follows: In 1916 the defendant, Jesse Sullivan, and one Dunbar, entered into an oral contract to farm certain land belonging to the defendant Sullivan on a crop-share plan. Dunbar purchased a half interest in certain livestock, seed and farm machinery. After the partnership had been in existence for some two or three years an attempt was made to arrange a dissolution, but the parties were unable to agree. Dunbar left North Dakota in 1918 or the early part of 1919 and turned the matters in dispute then pending between him and the defendant Sullivan over to an attorney at Lisbon for adjustment. In June and July, 1918, such attorney wrote to the defendant Sullivan and asked him to call at such attorney's office. Nothing further developed until in December, 1923, when Dunbar instituted an action against Sullivan. The action came on for trial in 1924. A reference was ordered. Sullivan was found to be indebted to Dunbar in the sum of approximately $2,900. Judgment was entered in favor of Dunbar in September, 1928.

Dunbar was indebted to the plaintiff bank on a promissory note in the sum of $5,000, and on November 19, 1923, the plaintiff bank commenced an action against Dunbar upon such note. At the time the main action against Dunbar was instituted the plaintiff also instituted a garnishment action wherein the defendant, Jesse Sullivan, was named as garnishee. Dunbar defaulted and the plaintiff was awarded judg-

ment against him by default. Some time after the termination of the action brought by Dunbar against the defendant Sullivan, to-wit, on April 1, 1929, judgment was rendered in the garnishment action in favor of the plaintiff, First National Bank of Mendota and against the said Jesse Sullivan, as garnishee, in said action for the sum of $3,023.22.

On February 27, 1924, the defendant, Jesse Sullivan, executed and delivered to his wife, Ida Sullivan, a warranty deed conveying to her certain real property, including the property then occupied by them as a homestead. At the same time, he also executed and delivered to her a bill of sale of certain personal property. This action was instituted to set aside these conveyances and to subject both the real and personal property so conveyed to execution issued upon plaintiff's judgment against Jesse Sullivan. Upon the trial of this action the plaintiff called the two defendants for cross-examination. Aside from the documentary evidence, plaintiff adduced no evidence other than that adduced upon the cross-examination of the defendants. There is no dispute as to the facts stated above. The only question is whether the conveyances were or were not executed for the purpose of defrauding the plaintiff. The evidence shows that at the time Sullivan and Dunbar entered into the partnership arrangement, Sullivan owned the land in controversy here free and clear of all encumbrances; also that he owned certain personal property such as horses, cattle and necessary farm machinery. The evidence also shows that he had disposed of a considerable portion of such property before Dunbar instituted the action in 1923, although, at that time, he still had in his possession certain horses, cattle and machinery. At the time Dunbar and Sullivan entered into the partnership and during the continuance thereof, the defendant, Ida Sullivan, was the wife of one James Schenum, a neighbor of Sullivan. Schenum died February 23, 1920. At the time the partnership arrangement was entered into the defendant, Jesse Sullivan, was living upon his farm with his then wife, who was and had been an invalid for some time. After the death of Schenum, the then Mrs. Schenum (the present defendant, Ida Sullivan) came to the Sullivan home and nursed Mrs. Sullivan until her death which occurred in October, 1920. After Mrs. Sullivan's death, Mrs. Schenum continued in Sullivan's employ as housekeeper. `Jesse Sullivan and Mrs.

Schenum were married January 11, 1921. Sullivan had proposed marriage some time prior to the marriage but apparently Mrs. Schenum was not prepared to make an unconditional acceptance. At that time Sullivan was sixty-six years of age and Mrs. Schenum about forty-eight years of age. Sullivan was in poor health and he was threatened with blindness due to cataracts. He subsequently lost the sight of one eye and the sight of the other is greatly impaired. Neither Sullivan nor Mrs. Schenum had any children. Sullivan had only one living relative, a bachelor brother. According to the testimony of both the defendants, Mrs. Schenum, in response to Sullivan's proposal of marriage, stated that she would marry him only provided he would turn over to her all of his property. There is some testimony to the effect that he, in reply, stated that he would give it to her in his will but that Mrs. Schenum (who had had some litigation as regards the property of her former husband) stated that she did not want a will but wanted a deed; and that thereupon they prepared a written agreement wherein it was stated that Jesse Sullivan would give all of his property to Mrs. Schenum provided she would marry him and take care of him; that this agreement was signed by both parties and witnessed by a man named Doll, who at that time was boarding or making his home with them. The evidence further shows that on the day the deed and bill of sale were executed the two defendants went to the office of an attorney at Lisbon and requested him to prepare the deed and bill of sale. The defendant, Ida Sullivan, testifies that at this time she brought with her the written ante-nuptial agreement. The attorney, who prepared the deed and bill of sale and who took the acknowledgment of Jesse Sullivan thereto, was sworn and testified as a witness in the case. He testified that when the deed and bill of sale were prepared, the defendants did not produce the written ante-nuptial agreement, but that he noticed that the defendant, Ida Sullivan, had brought an envelope which she held on her lap while sitting in the office. Ida Sullivan testified that she had lost the ante-nuptial agreement; that she had made search for it among the papers in her house and in her safety deposit box and that she was unable to find and produce the agreement. Both defendants testified as to the contents of the agreement. The undisputed evidence shows that the subscribing witness is dead.

The defendants also called another attorney at Lisbon who had appeared as counsel for the defendant, Jesse Sullivan, in an action involving certain personal property, which action was instituted in 1921 and terminated in 1923. Such attorney testified that in a conference regarding such action the defendant Jesse Sullivan stated in effect that he had no property, but that all property, both real and personal, possessed by him and his wife belonged to his wife.

. After careful consideration of all the evidence we have reached the conclusion that the judgment appealed from must be reversed. The contention that the conveyances are fraudulent rests primarily, if not wholly, upon the relation of the parties; that is, upon the fact that it is a conveyance from the husband to the wife. As said, there was no evidence adduced by the plaintiff tending to show the fraudulent character of the transaction, except such inference as may be drawn from the transfer and the oral testimony of the two defendants. In order to find the transfer to be fraudulent the oral testimony of the defendants must be wholly disregarded and found to be false in all material particulars and the mere fact of the transfer, in the circumstances here shown, held to be fraudulent as against the plaintiff. While it is true that when challenged by a creditor a transfer from a husband to the wife should be carefully scrutinized, the transfer is not in and of itself deemed prima facie fraudulent. Anyone challenging the validity of the transaction must show it to be fraudulent, and the burden of proof is not sustained merely by proof of circumstances which give rise to suspicion. First Nat. Bank v. Mensing, 46 N. D. 184, 190, 180 N. W. 58.

" 'Suspicious circumstances are not the equivalents of proof; and unless all the facts and circumstances of the case, when taken together, are strong enough to generate a clear, rational conviction of the existence of the fraud charged, that conclusion ought not to be adopted which will destroy a prima facie good title to property, and blacken the characters of the parties concerned.' McDaniel v. Parish, 4 App. D. C. 213–216. Judgment cannot go upon mere suspicion. Mayers v. Kaiser, 85 Wis. 382–393, 21 L.R.A. 623, 39 Am. St. Rep. 849, 55 N. W. 688.

"The relationship between the parties is not a badge of fraud; it creates no presumption of fraud; neither, standing alone, does it war-

rant a judgment based upon suspicion. It calls for a closer scrutiny of the transactions than would be the case between strangers." First Nat. Bank v. Mensing, 46 N. D. 184, 190, 191, 180 N. W. 58. See also Union Nat. Bank v. Person, 48 N. D. 478, 185 N. W. 266; Rasmussen v. Chambers, 52 N. D. 648, 204 N. W. 178.

The plaintiff had the burden of establishing fraud by clear and convincing evidence. Certainly the documentary evidence in the case, —establishing as it did merely the fact of the transfer by instruments reciting consideration,—did not establish a prima facie case of fraud. The plaintiff apparently realized this as it sought to adduce other evidence and called the two defendants for cross-examination with the view of showing the fraudulent character of the transaction between them. But the testimony of the defendants, in our opinion, tends to support the transaction rather than to destroy it. Their testimony is not at all improbable. While the defendants were in substantial agreement as to the contents of the ante-nuptial agreement, there was no parrot-like recital of its alleged contents. In fact, there were slight differences in the answers of even the same witnesses; but the answers were all to the effect that the agreement provided, in substance, that Jesse Sullivan should and would convey all his property, real and personal, to Ida Schenum, provided she would marry him and care for him. Considering the status of the parties at the time the marriage was proposed and consummated it is not at all improbable that such an arrangement might have been made. It is true a considerable period of time intervened the marriage and the execution of the conveyances, but the testimony of the two defendants is to the effect that they came to Lisbon on different occasions to have the deed and bill of sale prepared but found the attorney, who then took care of their affairs, out of the city and that hence the matter was deferred from time to time. The testimony of the two defendants was to some degree corroborated by the testimony of the two attorneys. There is no contention that such attorneys had any interest whatever in this action and there is nothing in the record tending to impeach the good faith or truthfulness of either of them.

The judgment appealed from must be, and it is, reversed and plaintiff's action dismissed.

BIRDZELL, NUESSLE, BURR, and BURKE, JJ., concur.