## KOLBE v. HARRINGTON, *Sheriff.*

1. Where the record on appeal presents only a portion of the charge given on the court's own motion, it will be presumed that, as an entirety such charge covered everything properly contained in the instructions offered and refused.

2. Where, in an action by a wife against a sheriff for the conversion of money attached in a bank by a creditor of her husband, received on sale of land taken in exchange for land purchased and held in her name, both husband and wife testified that the money invested was the principal and accumulated interest of money loaned by the wife to the husband, for the repayment of which no definite time was fixed, it was not error to instruct that the theory of the plaintiff was that at a certain time she gave her husband money, and that there was some agreement between them that at some indefinite time the husband was to repay the money.

3. It was not error to instruct that a husband has the right to deal with his wife, and pay her an honest indebtedness in an honest manner.

(Opinion filed December 31, 1901.)

Appeal from circuit court, Douglas county, HON. E. G. SMITH, Judge.

Action by Katherine Kolbe against Frank Harrington, sheriff. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

The facts are stated in the opinion.

*R. S. Horton* and *E. P. Wanzer,* for appellant.

*E. W. Cline,* for respondent.

FULLER, P. J. At the suit of a creditor of plaintiff's husband the defendant sheriff attached $943 paid to the Armour State Bank by puchasers of some South Dakota land standing in her name. In this action for the wrongful conversion thereof she obtained the judgment here presented for review. Though controverted by prominent circumstances, we find the testimony sufficient to justify the conclusion of the jury that respondent, for a valuable consideration, and in good faith, purchased and became the fee-simple owner of certain real property in the state of Iowa, which was exchanged for the land conveyed by her in consideration of the money seized as the property of her husband. Without further comment we pass from the contention that the evidence is insufficient. The remaining questions relate to the rejection of certain instructions proposed by counsel for appellant and the charge as given to the jury by the trial court. Now, as the record presented on this appeal purports to give only a fragmentary portion of what counsel for appellant say "was a long charge to the jury," it will be presumed in support of the judgment that, as an entirety, such charge, given by the court on its own motion, properly covered everything contained in the instructions offered and refused, so far as the same were allowable. It is urged that there is no evidence to sustain the following prefatory instruction: "The theory of the plaintiff in this case, as I understand it from the evidence, is, very briefly stated, this: That at a certain time she gave to her husband, William Kolbe, a certain sum of money, which I believe is stated to have been the sum of $360; that there was some agreement or understanding between herself and husband that at some time, which appears to have been left indefinite, the husband was to repay this money." Both respondent and her husband testified positively that at the time of their marriage, which occurred in 1878, the former had $360, which she

then loaned to the latter, pursuant to an agreement that he was to pay her 8 per cent annual interest as long as he kept the money. Concerning the terms of the loan, time of payment, and purchase of the property exchanged for South Dakota land, the testimony of respondent is in part as follows: "Q. At the time you were married to Mr. Kolbe, what property had you of your own? A. I had $360 in cash. Q. What did you do with that money? A. I lent it to my husband on interest at 8 per cent. Q. How long did you lend it for? A. No definite time stated, but he kept it from 1878 to 1894. Q. Then there was no time fixed when he should pay it back? A. He should pay it beck when he sells the last piece of property. That was the agreement. I insisted on having my money when he sells the last piece of property. Q. What did he do with the money when you let him have it? Do you know? A. He bought property. Q. Where was the property? A. On South Thirteenth street, between Dorcas and Martha streets, Omaha, Neb. How much, if anything, did you pay Chris Hahn for this property? A. $3,525. Q. How did you pay this money to him? A. I insisted that my husband pay me the money he had borrowed from me. I got the money from my husband—the money I lent him. Q. Where did you get the balance of the $3,500 you say you paid Chris Hahn for the property? A. There was $1,800 mortgage on it. I assumed that, and the rest I owe him today." The foregoing is thus corroborated by her husband: Q. Did you pay your wife at any time any money? A. Yes, I did. Q. How much? A. $1,000. Q. How came you to pay her the thousand dollars? A. After that property was sold to Weighton, Weighton kept it, and she made a demand at that time that she wanted her money that she loaned me when we got married, and we kind of figured out with accrued interest it amounted to that much, and I

began to save up, and two years after that property was sold I had $1,000 saved up, and paid it to her." That the instruction complained of is warranted by the evidence offered and received without objections is too clear to justify further elucidation. Nor is there the slightest merit in the contention that it was error to give the following instruction: "A husband has the right to deal with his wife. A husband has the right to pay his wife an honest indebtedness in an honest manner. If it is a good-faith transaction, an honest transaction, he has a right to do that. Now, this was a transaction between husband and wife, and the husband had a right to pay that wife, if there was an honest indebtedness; and if he paid her what was right, and reasonable, and just, he had a right to pay that." The instructions of the court were quite as favorable to the defendant as the facts of the case would justify, and, as there is nothing in the record to warrant a reversal, the judgment appealed from is affirmed.