FINCH, VAN SLYKE & McCONVILLE, a Corporation, Appellant,
    v. C. E. STYER, Catherine Styer, Mary F. Regan and Ida E.
    Gallock, Respondents.

(199 N. W. 444.)

**Fraudulent conveyances — transactions between husband and wife are not presumptively fraudulent but are scrutinized more closely than where confidential relations do not exist.**

1. In an action by a judgment creditor to set aside a transfer from husband to wife on the ground of fraud, the transaction is not presumptively fraudulent, but should be scrutinized more closely than transactions between parties where no confidential or intimate relations exist.

**Fraudulent conveyances — preferred creditors — husband may pay debt to wife in good faith; debtor may in good faith prefer creditors.**

2. The husband may become indebted to his wife in good faith and such debt may be paid by him in an honest manner, like other debts owing other creditors. A debtor may in good faith prefer some of his creditors, even if the result be to disable him from paying other creditors in full.

**Fraudulent conveyances — right to prefer creditors not limited to those other than debtor's wife; wife held under evidence good faith creditor of husband entitled to payment.**

3. The right to prefer creditors in good faith is not limited to creditors

Note.—(1, 2) Validity of conveyance by husband to wife in satisfaction of bona fide debt, see note in 56 L.R.A. 823; 12 R. C. L. 514, 515, 589; 2 R. C. L. Supp. 1439, 1460; 4 R. C. L. Supp. 760-762.

other than the debtor's wife. For reasons stated in the opinion, it is held, that the wife was a good faith creditor of the husband and as such entitled to payment of her claim.

**Husband and wife — law implies promise between to pay debt amount of which has been agreed upon.**

4. When the parties agree upon the amount of the debt due from the husband to the wife, the law implies a promise to pay the amount.

**Fraudulent conveyances — creditors cannot complain of transfer of statutory by husband to wife.**

5. Creditors cannot complain of the transfer of the statutory homestead by the husband to the wife; plaintiff could acquire no legal interest in the homestead through attachment proceedings.

**Fraudulent conveyances — evidence held insufficient to show that wife acquired title to property as trustee of husband.**

6. For reasons stated in the opinion, it is held, that Mrs. Styer did not acquire the title to one of the parcels sought to be attached and sold under execution under circumstances making her trustee thereof for her husband.

**Fraudulent conveyances — evidence held insufficient to warrant setting aside conveyances between husband and wife.**

7. For reasons stated in the opinion, it is held, that the transfers were not fraudulent. .

Opinion filed June 12, 1924.

Accounts and Accounting, 1 C. J. § 301 p. 697 n. 80. Fraudulent Conveyances, 27 C. J. § 66 p. 441 n. 56; § 363 p. 613 n. 82; § 405 p. 639 n. 23, p. 640 n. 24; § 408 p. 643 n. 79; § 719 p. 795 n. 93; § 775 p. 828 n. 12; § 786 p. 838 n. 90, p. 840 n. 6. Homestead, 29 C. J. § 414 p. 966 n. 71. Husband and Wife, 30 C. J. § 254 p. 675 n. 48.

Appeal from the District Court of Ward County, North Dakota, *Lowe,* J.

Affirmed.

*P. M. Clark* and *McGee & Goss,* for appellants.

The fraudulent intent to defraud creditors must be shown in both the grantor and the grantee, otherwise the conveyance is not in fraud of creditors and is valid. Wannemacher v. Merril, 22 N. D. 46, 132 N. W. 412; Fluegel v. Henneshall, 7 N. D. 276, 74 N. W. 896; Union Nat. Bank v. Person, 185 N. W. 268; First Nat. Bank v. Mensing, 180 N. W. 58.

It is true that it is held in some jurisdictions that where a husband conveys to his wife and the transfer is attached by creditors, the burden of proof shifts and the wife is held required to show the bona fide of the transaction and in one case. Fluegel v. Henneshall, 7 N. D. 276.

There probably never was a case of circumstantial evidence that could not be blown to the winds by taking up each item separately and dismissing it with the conclusion that it does not prove the case. The cumulative force of many separate matters, each perhaps slight, as in the familiar bundle of twigs, constitutes the strength of circumstantial proof. 27 C. J. 823, note 58.

The debtor's statement as to his financial condition made for the purpose of obtaining credit are admissible to show fraudulent intent on his part although the statements were not made in the presence of the grantee. 27 C. J. 807.

Where the contest is between the husband's creditors and the wife, over property which the wife claims, but which there are probable grounds for believing belongs to the husband, it is incumbent on the wife to show by satisfactory evidence that she purchased and paid for the property from her separate estate. Meighan v. Chandler, 20 N. D. 238, 126 N. W. 992.

The law will treat as null and void as to creditors, all fraudulent contrivances to screen the property of the debtors from his creditors. It is not the consideration but the intent with which a conveyance is made that makes it good or bad as against creditors; and however valuable a consideration if the conveyance be designed to hinder, delay or defraud creditors, it is void. This was a real conveyance to a father-in-law of all property real and personal. Sheridan v. McCormick, 39 N. D. 641, 8 A.L.R. 593, 158 N. W. 59; Daisy Roller Mills v. Ward, 6 N. D. 317, 70 N. W. 271; Paulsen v. Ward, 4 N. D. 100, 58 N. W. 792.

*Eldon O. Hanson* and *G. S. Wooledge,* for respondents.

The question of intent is always one of fact. It must be alleged, proved and found in order to avoid the transfer. The fact of insolvency of the grantor and the inadequacy or total want of consideration are evidence of the grantor's intent to defraud, but are not conclusive evidence. The fraudulent intent is the ultimate fact in issue. Insolvency and want of consideration are evidentiary facts, from which the fraudu-

·lent intent may be inferred. In this case the trial judge ·found that the conveyance was without fraudulent intent, and that is the ultimate fact in issue, and the finding is conclusive. This finding is in no way affected by the presence of the additional findings as to the grantor's insolvency and the absence of consideration, for the latter, as already stated, are merely evidentiary. The trial judge might have inferred a fraudulent intent from those facts, but he did not do so, but found there was no fraudulent intent. Stevens v. Meyers, 14 N. D. 398.

The burden of proof is, of course, upon the defendant and appellant to prove its allegation of fraud, and such proof must be clear and convincing. McKillip v. Bank, 29 N. D. 541.

The conveyance to the wife will not be declared fraudulent where the husband was not at the time indebted beyond his probable means of payment. Jaquith v. Massachusetts Baptist Convention, 52 N. E. 544.

It is no fraud if the husband retains property more than nominally equal or in excess of indebtedness. Deering v. Holcomb (Wash.) 67 Pac. 241. Lloyd v. Fulton, 91 U. S. 479.

If the conveyance was valid when made, the husband retaining ample property to pay his debts, the fact that thereafter, from causes not anticipated the value of such property retained so depreciates that he becomes insolvent will not render the conveyance void as against existing creditors. Morgan v. Hecker (Cal.) 16 Pac. 317; Brumbaugh v. Rich Creek (Ind.) 22 Am. St. Rep. 649.

Judgment creditor has burden of proving fraud, notwithstanding grantor and grantee are parent and child. Insolvent debtor's preference of child is not fraudulent as a matter of law. In this case there was no note or account kept evidencing the dealings between the parent and child. First Nat. Bank v. Mensing, 46 N. D. 184, 180 N. W. 58.

A conveyance to a wife will not be set aside where none of the husband's means has gone into the property, although it was intended to keep the property from the husband's creditors. McLean v. Hess (Ind.) 17 N. E. 567.

JOHNSON, J. This is an action by a judgment creditor of C. E. Styer, one of the defendants, to set aside transfers of real property, alleged to have been fraudulent, and to subject the property to the

lien of the judgment in attachment and execution proceedings. The defendants are the original judgment debtor, his wife and the grantees. The trial court found that the transfers were not fundamental and a judgment was entered against the plaintiff. ·

Prior to January 1, 1911, defendant Styer owned and operated a merchandise business at Outlook, Montana. On that date the stock of merchandise was destroyed by fire. Styer at that time lived with his wife and two children at Crosby, North Dakota, about 85 miles from Outlook. The stock was insured in the sum of $2,000, which was paid Styer on or about January 6, 1911. At the time of the fire, Styer was the owner of lot 11, block 20, and of lot 10 and the west 105 feet of lot 12, block 20, in Crosby. On July 10, 1911, lot 3, block 15, in Crosby, was conveyed by one Paulson and wife to Mrs. Styer; this deed was recorded October 26, 1911.

On December 5, 1912, plaintiff obtained a judgment against Styer upon an indebtedness on account of merchandise furnished prior to the fire.                                                                                                                      :

On January 6, 1911, there was executed and on the 19th of January, 1911, filed for record, a warranty deed in which C. E. Styer conveyed to his wife lot 10 and the west 105 feet of lot 12, block 20, for the recited consideration of $1,500; and on March 23, 1912, there was executed and on November 26th following filed for record, a warranty deed in which the Styers conveyed to Ida E. Gallock lot 11, block 20, for the recited consideration of $650; and on December 28, 1912, the Styers, by deed of warranty, conveyed to Mary F. Regan lot 10 and the west 105 feet of lot 12, block 20, the deed reciting a consideration of $1,500. This instrument was recorded on December 31, 1912. Plaintiff contends that these transfers, including that from Paulson and wife to Mrs. Styer, were all made for the fraudulent purpose of hindering, delaying, defeating and defrauding creditors, and particularly this plaintiff, in contravention of §§ 5599 and 7220, Comp. Laws, 1913.

The Styers were married in 1900 and thereafter lived for some years at Caledonia in the State of Minnesota. For some years following the marriage, Mrs. Styer and her husband testified in substance that she taught school and also assisted with the clerical work in the office of the register of deeds, held by her husband, and that she put

her earnings into a home which they built at Caledonia, at a cost of about $4,000. Mrs. Styer taught school the first year after they were married and six months after the first child was born she started teaching again, and during much of the time helped in the office of the register of deeds. They came to Crosby, North Dakota, in 1907, having sold their home in Caledonia a few months before they left Minnesota; the proceeds were received by the husband and apparently by him invested in a general merchandise business established at Crosby, in which he continued for four or five years. She testifies that she had at different times a bank account in her own name in Minnesota, at times as high as $600 or $800. He also opened a business at Outlook about the year 1909. The testimony is clear and explicit and wholly uncontradicted that Mrs. Styer advanced money to her husband, aggregating $1,400, that was put into the home in Minnesota which was later sold by him and the proceeds put into the business at Crosby. This was money that she earned by her own labor. The testimony is also explicit and uncontradicted that there was a definite understanding between husband and wife before they left Caledonia that the husband *owed* the wife approximately $1,400 on account of the advances made by her towards the purchase of the Caledonia property. There is no testimony that there was a specific or definite agreement that this amount should be repaid by the husband, the testimony being simply that they agreed that he owed her this amount. The testimony shows that Mrs. Styer did not take a note and that no demand for the repayment of this amount was made until after the fire on January 1, 1911.

Styer was with his family at Crosby when he received news of the fire that destroyed his stock of merchandise at Outlook. He was at that time indebted to the plaintiff and to Allen & Company on account of goods furnished him for the store, in a sum aggregating about $4,000. He had book accounts outstanding, the face value of which was in excess of his indebtedness to these creditors. When the news of the fire was received, the testimony shows that husband and wife had an extended conversation with reference to business matters; that he planned to go to the cities to discuss his affairs with these creditors and to make adjustments with them; the Styers seemingly intended to continue in business and to obtain more stock. The testimony of both

of· them indicates that they believed that the accounts outstanding would be more than sufficient to meet the indebtedness of the two creditors named. The insurance did not nearly·cover the loss and apparently Mrs. Styer was concerned over this disaster. In any event, she insisted very strongly that he transfer to her the property at Crosby; she emphatically demanded it for the protection of herself and the children. The husband refused to make the transfer, whereupon she told him that if the transfer were not made she and the children would be gone when he returned. She testified that she intended to leave him and go to Minneapolis to teach school so as to educate her children. She positively denies that there was any intent on the part of either herself or her husband to defraud creditors, saying that they both supposed and believed that the accounts outstanding were more than sufficient to pay all claims. Her testimony is in substance that she became alarmed over the disaster at Outlook and desired to be protected and repaid the advances made in Caledonia. Mr. Styer left without signing a deed, but at Minot prepared a deed conveying lot 10 and the west 105 feet of lot 12 to his wife. This instrument was dated January 6, and was recorded January 19, 1911. Both testify that this conveyance was made in payment of the loans made in· Caledonia.

On or about July 10, 1911, Mrs. Styer completed negotiations with one Paulson for the purchase of a small confectionery business at Crosby. This business and the postoffice were conducted in the same building. Mr. Styer was appointed postmaster sometime during July, 1911. The property purchased was lot 3, block 15. Title was taken in the name of Mrs. Styer. The testimony of the Styers is to the effect that they borrowed approximately $1,500 from Mary Regan, a sister of Mrs. Styer, who was a school teacher, for the purchase of lot 3, and that the deed executed by the Styers to Mary Regan on December 28, 1912, was intended as security for this loan. On August 22, 1913, Mary Regan reconveyed to Mrs. Styer lot 10 and the west 105 feet of lot 12. The testimony of the Styers is to the effect that the money loaned by Mary Regan was repaid her at different times by Mrs. Styer out of the earnings of the confectionery business and the rent paid by the government for the postoffice and that the husband did not help to pay that indebtedness or put any money into the business. His

salary as postmaster, he testifies, was used by him for the support of the family.

With reference to the deed of the Styers to Ida E. Gallock, dated March 23, 1912, and conveying lot 11 of block 20, the court found that at the time of the conveyance the property was the homestead of the Styers. The testimony of the Styers is that Ida Gallock, who is a sister of Mr. Styer, had loaned money to her brother at different times and that this deed was executed to her as security for loans aggregating $650. Mrs. Gallock had been a widow for some time. Neither she nor Mary Regan testified in the case. One was living in Minneapolis and the other in Seattle at the time of the trial.

It is not necessary to discuss at length the evidence with reference to lot 11. It is agreed that this property was the homestead of the Styers at the time of the conveyance, worth less than the statutory maximum, and inasmuch as the plaintiff or other creditors could acquire no interest therein by attachment, legal fraud could not be perpetrated against them by transferring it to Mrs. Gallock. McKillip v. Farmers' State Bank, 29 N. D. 54, 151 N. W. 287, Ann. Cas. 1917C, 993. Ida Gallock retransferred this property to Mrs. Styer on November 6, 1916, the indebtedness having been paid. The testimony shows that Mrs. Styer received the rent from the United States Government for the postoffice, which was maintained in the building on lot 3 and that she paid with her own money the indebtedness to Mary Regan and Mrs. Gallock, and that partly for that reason the transfers were made to her when the debts had been paid.

The trial court made extended findings of fact with reference to all of the transactions set out above. The court found expressly that there was no fraud on the part of either grantor or grantee in any of the transfers or transactions described and that the defendant Styer was in fact indebted to his wife, Mrs. Styer, on account of actual loans of money made in good faith to him while they lived in Caledonia, Minnesota. The court further found that at the time of the transfer of lot 10 and the west 105 feet of lot 12, the husband was indebted in approximately $6,000, and that the husband, at the time of the transfer, thought he had sufficient property to pay all his debts and that there was no intent on the part of either husband or wife to defraud creditors. The court further found that it was the intention of the

husband to give the homestead to his wife and that the creditors have no right to complain because they have suffered no legal injury. The court found, with reference to lot 3, that the money paid therefor was borrowed by Mrs. Styer from Mrs. Gallock, Mary Regan and one E. F. Gross, and Styer never had any interest whatsoever in the property or the business conducted on the premises. Under the facts in this record, it cannot be said that Mrs. Styer acquired the title to lot 3 in circumstances making her trustee thereof for her husband.

We do not deem it necessary to recapitulate the evidence further. We think the evidence is sufficient to support the findings of the trial court upon the facts and see no reason why they should be disturbed. There is no direct evidence of fraud. Transactions of this sort between the husband and wife are not presumptively fraudulent, but should be scrutinized more closely than those between parties where no confidential or intimate relations exist; see First Nat. Bank v. Mensing, 46 N. D. 184, 180 N. W. 58. It is unquestionably the law that the husband may become indebted to his wife and such a debt may be paid by him in an honest manner like other debts owing other creditors. See Comp. Laws, 1913, § 4411; and Kolbe v. Harrington, 15 S. D. 263, 88 N. W. 572. The question of fraudulent intent is one of fact. Comp. Laws, 1913, § 7223. We find nothing in the record that would warrant us in holding, in view of the undisputed testimony, that the wife was not in fact and in good faith a creditor of her husband and as such entitled to payment of her claims; the right to prefer creditors in good faith in this state is not limited to creditors other than the debtor's wife. It is true, there was no definite or express promise to pay, but there was a definite and express agreement, about the time they sold the house at Caledonia, which had been built, in part, with her separate earnings, that the husband owed the wife a specific amount of money because of actual cash loans at different times. From this acknowledgment of the existence of a debt the law implies a promise to pay. Comp. Laws, 1913, § 5885. See also 1 C. J. 697 and note. The fact that Mrs. Styer insisted very strongly upon being repaid and threatened to leave her husband if he didn't make the transfer, is emphasized by counsel for the appellant as indicating conclusively a fraudulent intent. We do not think that such an interpretation of the testimony would be correct or must necessarily

be made. If she was a creditor of her husband, as the evidence clearly discloses and the trial court properly found, she had the same right to use diligence and legitimate means to collect her debt as other creditors. We cannot say that the somewhat drastic and perhaps unusual means chosen by her to enforce collection were of such a nature as to impress them with fraud. She had become alarmed that her husband might not be able to repay her loan; she was anxious to protect her children and to provide the means for their education; the pressure that other creditors might exert thru threats of legal proceedings she brought to bear by serving notice that she would leave him if he did not pay. We are not required to approve the methods adopted. We would not be justified in holding that they conclusively established a fraudulent intent.

Our conclusions in this case are in no manner inconsistent with Meighen v. Chandler, 20 N. D. 238, 126 N. W. 992. The facts in that case are entirely different from the facts in the case at bar.

The judgment is affirmed.

BRONSON, Ch. J., and BIRDZELL, CHRISTIANSON, and NUESSLE, JJ., concur.

Opinion filed June 12, 1924.

