[File No. 5941.]

L. R. BAIRD, as Receiver of the Farmers State Bank of Gwinner, North Dakota, Respondent, v. R. M. HOLIE and Clara Holie, Appellants.

(237 N. W. 786.)

Opinion filed August 1, 1931.

*J. E. Hendrickson* and *C. G. Dosland,* for appellants.

*Charles S. Ego,* for respondent.

Burr, J. During all of the time involved herein the defendants were husband and wife. In 1902 three contracts for sale of three quarter sections of school lands—being part of the land involved herein—were executed with the defendant R. M. Holie as stated purchaser, the initial payments totaling $1952.00. Thereafter deeds were issued to R. M. Holie. The remainder of the land involved—three hundred and twenty acres—was also held in the name of the same defendant.

The Farmers State Bank at Gwinner, in which the defendant R. M. Holie was a stockholder, became insolvent in October 1927 and the plaintiff is now the receiver.

Ever since 1919 the defendants have been residents of Minnesota and in September 1928 the defendant R. M. Holie conveyed all of the eight hundred acres of land to his co-defendant Clara Holie, the deed being duly recorded.

In March 1929 the plaintiff commenced two actions against the defendant R. M. Holie in the district court of Hennepin county, Minnesota—one because of defendant's liability as a stockholder of the defunct bank, and the other on a promissory note given to the bank. Judgments for $2262.00 and $697.00 respectively, were entered in April 1929.

The action at bar was commenced in August 1929. A warrant of attachment was issued and all of the lands involved herein attached. The affidavit for attachment sets forth that the "action is based on a judgment for the recovery of money only;" that the defendants are nonresidents of the state; and that "the defendant R. M. Holie, sold, assigned, transferred, secreted and otherwise disposed of his property with the intent to cheat or defraud his creditors or to hinder or delay them in the collection of their debts."

The complaint sets forth three causes of action, viz.: first, upon the judgment obtained in Minnesota because of the liability on the bank stock; second, upon the judgment obtained in Minnesota because of the indebtedness evidenced by the promissory note; and third, to set aside the transfer of all of the real estate from the husband to the wife, so far as this plaintiff is concerned, and subject the same to the judgments

obtained on the first and second causes of action, and to declare any interest of the defendant Clara Holie in said land inferior to that of the plaintiff.

The complaint alleges in substance that the transfer of the property was made by the defendant R. M. Holie to his wife without any consideration whatsoever and "for the purpose and with the intent to cheat and defraud his creditors and hinder and delay them in the collection of their debts;" that the defendants planned and connived each with the other to the end that the said defendant, R. M. Holie, might be enabled to dispose of his property for that purpose; and that by reason of such transfer the defendant Holie was intentionally rendered insolvent.

The complaint was verified and filed with the clerk of the court on August 7, 1929 and the affidavit for publication of the summons on August 22, 1929. This affidavit sets forth that the defendants are nonresidents of the state, and that the relief sought in the action consists of defining and limiting the interest and lien of the parties to this action in the real property described in the complaint, and excluding the defendant Clara Holie therefrom or subjecting her interest therein to the interest of the plaintiff—following the provision of § 7428 of the Comp. Laws. Upon filing the affidavit the summons was published, the date of the first publication being within sixty days after the filing of the affidavit for publication as required by § 7432 Comp. Laws, the first publication being had on August 29, 1929, and the last on October 3rd. When a copy of the summons and complaint was mailed to the defendants as required by § 7430 of the Comp. Laws and the summons published "once in each week for six successive weeks" the service by publication was complete upon the expiration of thirty-six days after the first publication of the summons. See §§ 7429, 7430, and 7433 of the Comp. Laws. There is no claim copies of summons and complaint were not mailed as required.

The defendants appeared specially on October 18, 1929, objecting to the jurisdiction of the court on the ground of no service of the summons and complaint made upon them in North Dakota, and that the action was one in personam and not in rem. At the hearing they again appeared "specially" and moved, for dissolution of the attachment on the ground of no service on them in this state, that R. M. Holie had no

interest in the land attached, the same belonging to the defendant Clara Holie and that the complaint showed that "no debt exists against" her in favor of the plaintiff. These motions were denied, with leave to defendants to answer upon payment of terms fixed.

The defendants answered, objecting to the jurisdiction of the court on the grounds heretofore stated and alleging that the defendant R. M. Holie was not the owner of the property involved at any time. The answer denies fraudulent transfer and insolvency of R. M. Holie, and alleges that at the time the transfer was made and for all the time involved the defendant Clara Holie was the owner of said land, though taken in her husband's name; that her co-defendant at no time had any interest therein; and that when she purchased the land she paid full value therefor; that she was in no way indebted to the plaintiff; that the transfer was not fraudulent and not made to injure or delay creditors of any one.

The case was tried to the court without a jury. Both sides rested at the close of the plaintiff's case. Judgment was entered against the defendant R. M. Holie for the amount of the judgments obtained in Minnesota with interest, and against both defendants for the setting aside of the transfer of all the eight hundred acres of land involved and subjecting same to the lien of the attachment. Defendants appeal, demanding a trial de novo.

Appellants contend that this is not an action "on a contract or judgment for the recovery of money only," claiming it is an action in equity to set aside an alleged fraudulent conveyance, that no property of the defendant R. M. Holie has been attached, and that this is shown by the complaint, for the complaint admits that the property attached is now and was in the name of Clara Holie at the time of the commencement of the action; that this is not a case wherein an attachment may issue, therefore there is no attachment and without a legal attachment there is no jurisdiction to hear and determine the allegations set forth in the complaint. No attack is made on any other preliminary step taken—no defect claimed in the summons, its publication, mailing, etc.

Respondent claims he may combine the three causes of action and attach property standing in the name of Clara Holie for the purpose of collecting the judgments obtained in Minnesota, because the proper-

ty in truth and fact belongs to R. M. Holie; that this is an action for the recovery of money only, for it is an attempt to collect money judgments obtained in Minnesota; that the proceedings to set aside the alleged fraudulent conveyance are means adopted to facilitate the collection of the claim; and that though the title to the property was in the name of Clara Holie at the time of the commencement of the action, nevertheless the property is the property of the defendant R. M. Holie, the judgment debtor.

The trial court found the transfer to be fraudulent and this finding comes before us supported by such presumption as attaches to the weight to be given to the construction of the evidence by the trial judge.

The burden of proof to show the transfer is fraudulent is upon the plaintiff. This burden must be sustained by clear and convincing evidence. "In an action by judgment creditor to set aside transfer from husband to wife on the ground of fraud the transaction is not presumably fraudulent" though in such case it is scrutinized carefully. Finch, Van Slyke & McConville v. Styer, 51 N. D. 148, 199 N. W. 444; First Nat. Bank v. Sullivan, 60 N. D. 391, 234 N. W. 658. The fraudulent intent is a fact which must be established and the burden of doing so is upon the plaintiff in this case. Merchants Nat. Bank v. Armstrong, 54 N. D. 35, 208 N. W. 847. See also First Nat. Bank v. Mensing, 46 N. D. 184, 180 N. W. 58; Wannemacher v. Merrill, 22 N. D. 46, 132 N. W. 412.

If the wife was in fact a creditor of her husband, or if the land in fact belonged to her, although taken in the name of her husband there was no fraud on her part in taking the conveyance if she knew nothing about his intent to defraud creditors, even if such intent on his part be proved. See Bank of Sanborn v. France, 49 N. D. 1, 177 N. W. 375; Paulson v. Ward, 4 N. D. 100, 58 N. W. 792. If in fact she did furnish the money or was a creditor the plaintiff must show she participated in the fraud. See Baird v. Meyer, 55 N. D. 930, 56 A.L.R. 175, 215 N. W. 542.

It is true knowledge of such suspicious facts as should put a person on inquiry may be equivalent to knowledge of all the facts which would be developed by the inquiry. Fluegel v. Henschel, 7 N. D. 276, 66 Am. St. Rep. 642, 74 N. W. 996. But no duty of inquiry is placed upon the grantee unless she had actual knowledge of suspicious facts and cir-

cumstances. Fluegel v. Henschel, supra; Wannemacher v. Merrill, 22 N. D. 46, 132 N. W. 412, supra.

The only evidence produced is the documentary evidence shown by the contracts for the three quarters entered into by the Board of University and school lands wherein these lands were purchased in the name of R. M. Holie; that the title of the land stood in his name from 1902 until the time the transfer was made to his wife; the fact that a transfer of the eight hundred acres was made after the insolvency of the bank and while the defendant R. M. Holie was a debtor to the bank; the examination of the defendants before trial; and the testimony of three witnesses to the effect that R. M. Holie said he made the transfer because he owed money to his wife, and because he was afraid something might happen to him because of the insolvency of the bank. These witnesses all testify however that R. M. Holie told them his wife knew nothing about the transfer at the time the deed was executed. This is practically all the testimony in the case.

In his examination before trial defendant R. M. Holie testified:

That he never owned any of the school land, that while the title was in his name he held it in trust for his wife; that he deeded it to her after he knew there was trouble with the bank; that the land was always her property; that she did not pay anything to him at the time he gave the deed because she had paid for the land before; that they had been married for over thirty years; that his wife got an inheritance from her mother and grandmother and her father advised her to invest it in land so when the three quarters of school land were auctioned they were bought on easy payments and her money was used to buy the land; that she had some money at home and some money in the bank deposited in his name; that his only income at that time was his salary of $250.00 per year so that he had no money. That after the insolvency of the bank he deeded all of the land because he felt it should have been done before; that the transfer was not made because he was afraid there would be trouble over the bank; that he was not afraid of anything except "I felt it was my duty to transfer that property that belonged to my wife." That there was no discussion between him and his wife as to the transfer, as she was not consulted about it at that time; when she got notes for some money these notes were made payable to him; that her mother died when his wife was three months old,

and her father kept the money in trust for her; his wife's father borrowed $1500.00 of this money and gave a note for it; that the rest was paid over from time to time and that the initial payments on the land were made from his wife's money; that he never told the witness for the plaintiff that he transferred this property so that his creditors could not reach him.

Clara Holie testified on her examination before trial:

That the first she knew of the deed was when her husband came back from the court house and told her that he had executed it; that she had not discussed with him the matter of making a transfer of the property; that she knew he had the deed to the property but "I knew also it was my money it was bought with;" that she did not think it made any difference; that she never asked her husband to transfer the land to her; she said "I bought those quarters of school land with my mother's inheritance and I used it all to—well that is to pay the first payments." She was not able to tell the amount of the inheritance but stated she was the only child and the money was put in trust for her when her mother died; that her father borrowed $1500.00 from her and gave his note for it; that she got about $800.00 or $900.00 of the inheritance when she was married; that she kept $800.00 or $900.00 of the money in the house in the bottom of a trunk and the rest in the bank. She said she knew "it is foolish to do so but we did." She did not know how much was in the bank but it was enough to pay the first payments on the three quarters; that her husband had no money, all he had was his salary; to buy the stock in the bank he borrowed money from her and from his sister and from "an old aunt that lived with us." This was used to buy the stock. She said she did not take any interest in particular in regard to her husband's relationship to the bank and she did not know anything about his liability as a stockholder, though she knew he was a stockholder, except that she told him that he should not invest in bank stock. .

The purchase price of these three quarters bought from the state is $9160.00 as stated in the contracts. There is no proof whatever as to when the remainder of the purchase price was paid. No one was asked where the money came from, whether there were any crops raised on the land, who got these crops and whether the income was devoted to the payment of the purchase price.

There is no testimony whatever relative to the 320 acres of land not bought from the state. We do not know from where title to this land came, how it came into the name of the defendant R. M. Holie, or why he transferred the land to his wife.

There is no proof that this land stood in the name of R. M. Holie, except the fact that Holie included it in his deed. Whether he had title to it, or merely an interest in it, or whether he held it in trust for his wife are all unknown.

There is no direct testimony showing the transfer of this land rendered the defendant R. M. Holie insolvent, nor was he or anyone else asked whether he had any personal property or any other real estate in Minnesota or elsewhere. The nearest approach to this feature is his incidental testimony that he had no money when the school land was bought, and that he had a salary of $250.00 per year, that he had no money and all he had was his wife's. There is nothing to show that there were any judgments against him except the two judgments sued upon. There is no proof of any execution ever having been issued and returned unsatisfied or any attempt made to collect the judgments. The question of insolvency rests solely upon the conclusions to be drawn from the fact that he gave to his wife a deed of 800 acres of land and that twenty-five years ago—and for some time subsequent thereto he had no money but a salary of about $250.00 per year; that the judgments are unpaid and he said he had no money and all he had was his wife's. The wife said his salary "was used, every bit of it, to live on." The insolvency to be proved is insolvency at the time of the transfer. The reasoning of this court as set forth in Rising & Isaacs v. Dickinson, 18 N. D. 478, 482, 23 L.R.A.(N.S.) 127, 138 Am. St. Rep. 779, 121 N. W. 616, 20 Ann. Cas. 484, is applicable; and insolvency must be proved as any other fact denied.

The testimony of the defendants was taken by deposition and so this court has exactly the same opportunity to determine the character of the testimony for the defense that the trial court had. The examination shows considerable hesitancy on the part of defendants in their testimony, arising apparently from inability to understand some of the legal terms that were used and the language that was ordinarily used in court. There is nothing inherently improbable in their story. For the last eleven years the defendants have been living in Minneapo-

lis.   There is nothing in the record that shows the husband knew anything about the business of the bank, or had any part in its transactions. True a transfer of land standing for twenty-five years in the name of the husband, and made by the husband after the insolvency of the bank, is certainly suspicious.   The testimony furnished by the plaintiff is to the effect that this transfer was made to prevent trouble arising from insolvency of the bank, but this is denied by Holie.   The recital of the transactions between husband and wife does not show an unusual state of affairs.   The testimony shows conclusively that R. M. Holie had no money of his own when the land was purchased; that all money used in these transactions came from his wife.   There is no direct testimony that it was the intent of the defendants to have the school land taken in her name; but it does appear that it was bought for her.   A review of the testimony convinces us that the plaintiff has failed to support the burden of proof to show that such transaction was fraudulent and having failed so to do the finding of the trial court in this respect is erroneous.

But though the plaintiff has failed to show the conveyance fraudulent the personal judgment rendered against the defendant R. M. Holie is not necessarily invalid.   It will be noticed the first "special appearance" and the subsequent motion made by the defendants did not attack the form or contents of the summons, nor the affidavit for publication, nor the method or form of the publication, nor the affidavit of publication, nor the procedure whereby copies of the summons and complaint were mailed to the defendants in Minnesota.   These are the steps necessary to obtain jurisdiction of the case.   Nowhere is it claimed there is any defect in any of them.   In other words the attack is not made upon the summons nor the service of the summons.   In Ellingson v. Northwestern Jobbers Credit Bureau, 58 N. D. 754, 227 N. W. 360, we hold that, where the defendant, in a special appearance, makes timely and proper objection to the jurisdiction because of defects in the service of the summons he does not waive this objection by answering.   Such action is obstructive, and does not seek relief.   Setting up a counterclaim or asking affirmative relief is a different proposition.   This distinction is foreshadowed in note found in Ann. Cas. 1916E, 1270.   In the case at bar, the defendants not only made a "special appearance" but at the

same time moved the court to dissolve the attachment, because of the case and the levy.

The affidavit for attachment justified the issuance of a warrant, and before the court could dissolve the attachment on the ground that "no property, either real or personal has been attached belonging to the defendant R. M. Holie" the court would need to pass upon the steps taken to have an attachment issued, the levying upon the real estate described in the complaint, the notice of attachment as recorded, and the nature of the action.

It is true the complaint shows that at the time of the attachment the title to the property attached stood in the name of the wife; but this is not a ground for dissolution of the attachment. Section 7561 prescribes the method to be used in moving to discharge the attachment authorizing the court to discharge the attachment if it "was irregularly issued, or if the affidavit upon which it was issued is untrue." There is no claim of irregularity in the issuance of the attachment, nor, in the motion, is the truth of the affidavit attacked. Appellants' position is based upon their construction of the nature of the case as set forth in the complaint and whether under such construction the court is in position to render judgment. To determine these things the court had to pass upon the complaint the same as if a demurrer had been interposed. But this is not an attack upon the jurisdiction of the court. It is an appeal to the jurisdiction of the court. If the property attached did not belong to the defendant R. M. Holie then he was in no way injured and was not in position to litigate the claim that the title to the attached property was in his wife, his co-defendant. See Gilmore v. Olson, 54 N. D. 633, 210 N. W. 341.

In their answer the defendants attempt to preserve their "special appearance;" but they join issue on the merits, and this certainly is a submission to the jurisdiction of the court. The only question is whether such submission is governed by the rule laid down in Ellingson v. Northwestern Jobbers Credit Bureau, 58 N. D. 754, 227 N. W. 360, supra, or whether the rule in Gans v. Beasley, 4 N. D. 140, 59 N. W. 714, applies. In this latter case there was an attack upon the jurisdiction because of alleged defects in the summons, but there was also an appeal to the jurisdiction of the court in a motion to dissolve the attachment. In the case at bar there is no attack upon the sum-

mons or its service; but there is an attack upon the nature of the case; also a motion to dissolve the attachment. It is not what the defendant may style his appearance that determines the issue, it is what he asks the court to do. Even if his first "special appearance" was good yet their subsequent actions converted it into a general appearance. See Flannery v. Trainor, 13 Colo. App. 293, 57 Pac. 189; Mars v. Oro Fino Min. Co. 7 S. D. 614, 65 N. W. 19; Raymond v. Nix, 5 Okla. 660, 49 Pac. 110. One may not invoke the jurisdiction of the court to determine merits of an action and at the same time object to its jurisdiction over it. See Allen v. Bohner, 54 N. D. 14, 208 N. W. 234.

The objection of the defendants is, in effect, an objection to jurisdiction over the subject-matter. Where "a suit is commenced by attachment and the attachment is essential to the jurisdiction of the court, the dissolution of the attachment will carry with it the main suit." 6 C. J. 465. But the Court was correct in refusing to dissolve the attachment —no ground for dissolution being shown. It is true there is strong authority for the holding that an appearance by the defendant to attack an attachment is a special appearance which does not give the jurisdiction of the person (see 55 A.L.R. 1121, note) as such matters affect the attachment only. But in the case at bar the defendants attack the case itself. In Thornley v. Lawbaugh, 31 N. D. 651, 658, 47 L.R.A.(N.S.) 1127, 143 N. W. 348, this court made a distinction between an attack upon an attachment because of falsity or defect in the attachment proceedings prior to levy, and an attack upon the levy itself, saying in that case, that the defendant was not "moving to discharge the attachment proper because of falsity or defect in the attachment prior to levy, but instead is litigating the legality of the levy. Jurisdiction depends upon a levy upon defendant's property, and in a sense the motion thus goes to jurisdiction of subject-matter." As shown in Smith v. Hoover, 39 Ohio St. 249, "an objection to jurisdiction over the subject-matter is a waiver of objection to the jurisdiction of the person, while an objection to the jurisdiction of the person is a waiver of nothing." In the case at bar the defendants specifically object to jurisdiction over the subject-matter setting forth as one of the grounds for the motion "that the court has no jurisdiction over the persons herein *or the subject-matter* for the reason that no service of the summons and complaint

etc." was made on the defendants in North Dakota, and no property of R. M. Holie attached. Before this motion could be determined by the court it would be necessary for the court to try the title to the real property. This is one of the issues involved in the case. Thus, in the language of Thornley v. Lawbaugh, supra, the defendants are "endeavoring to controvert an alleged fact brought into the case, not by the issuance of the attachment alone, but by the levy." In Gans v. Beasley, 4 N. D. 140, 59 N. W. 714, supra, one of the grounds of attack was that the affidavit for attachment was fatally defective "in that the grounds of the plaintiff's claim are not therein stated," which, of course, required the court to pass upon the quality of the affidavit. And it is also true that in that case this court held the alleged defects in the summons were such as had been cured or could be cured by amendment; nevertheless the rule is laid down that the attack on the affidavit itself was such as invoked the jurisdiction of the court. In the case at bar plaintiff made no claim, originally, that the court obtained jurisdiction over the person of the defendants. While plaintiff sought to obtain a money judgment, it was clearly his intent to have it satisfied out of the property attached, if possible, and there was no claim for any deficiency judgment. The defendant R. M. Holie could have been content with this and have left it to his co-defendant to litigate her interest; but instead of doing this he sought to oust the court of jurisdiction over the subject-matter by attacking the nature of the action, and the levy of the attachment. By doing so he made a general appearance, no matter what he called it, and submitted himself to the jurisdiction of the court.

The judgment rendered against the defendant R. M. Holie is a valid personal judgment, and is correct; but that portion of the judgment holding the conveyance to be fraudulent is erroneous, and to this extent the judgment appealed from is reversed. Costs will be adjudged in favor of the defendant Clara Holie, and against the defendant R. M. Holie.

CHRISTIANSON, Ch. J., and NUESSLE, BIRDZELL, and BURKE, JJ., concur.